<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CHAKA KWANZAA, | : | |
| | : | |
| Plaintiff, | : | Civil No. 09-5132 (SRC) |
| | : | |
| v. | : | |
| | : | |
| DONALD MEE, JR., et al., | : | **OPINION** |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

> CHAKA KWANZAA, Plaintiff <u>pro se</u>
> #238671
> Northern State Prison
> 168 Frontage Road
> Newark, New Jersey 07014

**CHESLER**, District Judge

Plaintiff, Chaka Kwanzaa, a convicted state inmate presently confined at the Northern State Prison in Newark, New Jersey, seeks to bring this action <u>in forma pauperis</u>. Based on his affidavit of indigence, and absence of three strikes under 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) and (b), and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint and amended Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether this action should be dismissed as

frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that this action may proceed in part at this time.

## I.   BACKGROUND

Plaintiff, Chaka Kwanzaa ("Kwanzaa"), brings this civil action against the following defendants: Donald Mee, Jr., Administrator at East Jersey State Prison ("EJSP"); Mr. Paul, Superintendent at EJSP; R. LaForgig, Associate Administrator at EJSP; S. Pinchak, former Administrator at EJSP; T. Moore, former Administrator at EJSP; R. Swatij, former Superintendent at EJSP; G. Sheppard, Supervisor of Adjudicators for the New Jersey Department of Corrections ("NJDOC"); L. Meehan, NJDOC Adjudicator; Captain McWherter, EJSP; State Corrections Officer ("SCO") Gervasi, EJSP; Captain R. Hampe, EJSP; Sgt. W. Vessell, EJSP; Sgt. Jensen, EJSP; SCO Wilkerson, EJSP; SCO Delarossa, EJSP; SCO Shrenke, EJSP; SCO Randolph, EJSP; SCO Estcato, EJSP; Margret Lebak, State Ombudsman at EJSP; Doctor John Does and Nurse Jane Does, employees of the University of Medicine and Dentistry of New Jersey ("UMDNJ") at EJSP; John Does, Special Investigation Division ("SID"); and John Doe supervisory defendants with the NJDOC and the UMDNJ.  (Complaint, Caption and ¶¶ 9-17).  The following factual allegations are taken from the

Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Kwanzaa alleges that, from July 21, 2003 to the present, defendants, Mee, Paul, LaForgig, Pinchak, Moore, and Swatij, refused to correct allegedly "false, inaccurate records" in Kwanzaa's prison classification files, which affected his eligibility for parole, his maximum term date, and his status and classification determinations.  Kwanzaa alleges that he received retaliatory charges on August 16, 1999, from defendants Sheppard and Meehan for filing a grievance in July 1999.  Kwanzaa states that the Superior Court of New Jersey, Appellate Division reversed the NJDOC's determinations of Kwanzaa's guilt, with respect to this earlier disciplinary action, in an unpublished opinion in Kwanzaa v. DOC, A-5087-01 (App. Div. July 21, 2003). However, the 390 days of commutation credits have not been restored, and his classification files do not show that his credit has been restored.  (Compl., ¶¶ 18, 19).

Kwanzaa first filed a civil complaint in federal court regarding the 1999 disciplinary action, Kwanzaa v. Morton, et al., Civil Action 98-2709 (AET), which was dismissed, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).  Kwanzaa filed another federal action in December 2005, against defendants Pinchak, Moore, Swatij, McWherter, Sheppard, Meehan, and Gervasi, but his

case against these defendants was dismissed.   Kwanzaa claims the case was dismissed unlawfully.  (Compl., ¶ 19).

Kwanzaa now alleges that defendants Mee, LaForgig, and Paul have violated his constitutional right by subjecting plaintiff to denial of heat, proper ventilation, showers, unsafe drinking water with high levels of arsenic, and denial of food trays, from February 2, 2009 until October 2009 (when plaintiff filed this Complaint), in retaliation against Kwanzaa for filing grievances[1] and threatening to file this lawsuit.  Kwanzaa alleges that defendants failed to respond or provide a remedy with respect to his grievances.  (Compl., ¶¶ 20, 21).

Kwanzaa also complains that defendants, Mee, LaForgig and Paul, were on notice of plaintiff not receiving a timely administrative segregation ("ad seg")review within 60 days as per regulation.  He states that his ad seg started on January 20, 2009 and his review for a level change should have been held on March 20, 2009, but was not conducted until April 17, 2009. Kwanzaa further states that, on August 21, 2009, LaForgig reduced plaintiff's classification level from 3 to 2 in retaliation for filing a lawsuit in July 2009 on behalf of another inmate, which included the defendant Wilkerson, who also had been named in

_____

[1]  It appears that the grievance Kwanzaa filed had to do with a "stop talk" order, an in-house rule used to prevent the inmates from yelling and filing grievances, in violation of plaintiff's First Amendment rights.  (Compl., ¶ 20).

plaintiff's grievances filed in July and August 2009.  (Compl., ¶ 22).

Kwanzaa next alleges that defendants, Mee, LaForgig and Paul, violated his First Amendment right to freedom of religious exercise (and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000), 42 U.S.C. § 2000cc-1, and his right to equal protection under the law by discriminating against him and other Muslims in the ad seg unit.  Specifically, Kwanzaa states that during Ramadan, he did not receive the same meals as non-Muslims three times a day for a total of 2200 calories, which resulted in weight loss.  He also states that he did not receive his "Eid-ul-Fitr" meal after Ramadan, that his food was issued two hours before it was time so it became cold, and that the milk used for the "Sahur" morning meal was issued 13 hours in advance causing the milk to become spoiled by the time it was used. (Compl., ¶ 23).

The same defendants allegedly denied plaintiff clean sheets and pillow cases once a week and a clean blanket once every six months, as provided for prisoners in general population.  His cell also had bugs, ants, bad plumbing with water running down the walls, limited hot water, and bad drinking water.  (Compl., ¶¶ 24, 25).

Defendants Mee, LaForgig and Paul also allegedly placed Kwanzaa in tight handcuffs with a black box that twisted his

right wrist despite the fact that plaintiff is a disabled person
with medical orders that restricts leg shackles and allows
plaintiff to ambulate with a cane, which he could not do with his
hands cuffed.  (Compl., ¶ 26).

     Kwanzaa states that he also was denied access to the courts
by untrained paralegals, denial of postage stamps and pens at the
canteen for a month, which allegedly cause him to miss court
deadlines.  He further states that legal and regular mail is not
processed the next day as per regulation, and that his canteen
was altered (he was given 20 bags of peanuts and sun tan lotion)
in retaliation for filing an access to courts grievance.
(Compl., ¶ 27).

     Kwanzaa next alleges that he was denied razors so that he
could shave daily and haircuts once a month.  He also was limited
to one phone call per week on Thursday, which allegedly restricts
access to attorneys or family members.  Plaintiff states that
inmates may not add a new attorney to their phone list for 90
days.  He does not allege that this prison rule affected him in
any way.  He further states that visitation was restricted at the
EJSP ad seg unit to only parents, siblings, spouses and children.
(Compl., ¶¶ 28-30).

     Kwanzaa states that defendants are violating a court order
that purportedly requires cameras to be installed in the blind
spots in the ad seg unit, not just in the yard, in addition to
the cameras already in place.  He claims that the ad seg unit

6

does not have cable antennas or movies.  The canteen no longer provides cheaper televisions, but instead only offers televisions that cost $300 instead of $157.00.  Plaintiff also alleges that defendants are subjecting him to potential diabetes by supplying the canteen with sugar food products (with the exception of canned tuna).  (Compl., ¶¶ 31-34).

Kwanzaa further alleges that defendants Jensen and Shrenke retaliated against him for filing grievances.  On July 16, 2009, Shrenke and Wilkerson denied plaintiff medical care while he was suffering an asthma attack, by refusing to call a nurse.  Shrenke also violated plaintiff's rights by inquiring as to the medications that plaintiff takes.  On June 13, 2009, Shrenke confiscated plaintiff's legal materials without reason.  (Compl., ¶ 35).

On June 13, 2009, defendant DeLarossa denied plaintiff a food tray because plaintiff would not do his job by opening up the locked food port.  The same day, DeLarossa refused to call a nurse when plaintiff experienced chest pains and an acute asthma attack.  On July 31, 2009, DeLarossa drew a picture of a penis on plaintiff's cell name tag.  Delarossa and Wilkerson also lit fire to toilet paper in plaintiff's cell, causing the cell to become smoke-filled and plaintiff to suffer an asthma attack. Defendants refused to call medical for plaintiff, and he did not receive medical attention until five minutes before the second shift started.  (Compl., ¶¶ 36, 37).

On August 15, 2009, defendant Vessell came to investigate one of the two grievances plaintiff filed against DeLarossa, but refused to fully investigate the incident concerning the smoke. Kwanzaa had told Vessell that he had the cigarette DeLarossa used, which could be tested for his DNA, but Vessell replied that the cigarette could have come from anyone and declined to test the cigarette butt. Kwanzaa filed a criminal complaint with regard to this matter with the New Jersey Attorney General Anne Milgram, who has not responded to the complaint. Kwanzaa further asks the District Court to have the cigarette butt tested before defendants see the Complaint and take retaliatory action by transferring plaintiff or confiscating the cigarette. He also asks the Court to have federal criminal charges be issued against Delarossa and Wilkerson for their actions, and against Mee, LaForgig, Paul and Vessell for conspiring to cover up the incident. (Compl., ¶¶ 38-40).

On August 15, 2009, defendant Estcato allegedly refused to comply with medical orders for plaintiff by not allowing plaintiff to ambulate with his cane by hand cuffing plaintiff behind his back. Kwanzaa alleges that Estcato also tripped plaintiff and kicked him in the mouth when he could not get up. He also states that Estcato violated plaintiff's right to free exercise of religion by referring to plaintiff by his birth name, not Kwanzaa. (Compl., ¶¶ 41-42).

On March 25, 2009, defendant Oliminawiez retaliated against plaintiff for filing a grievance against a co-worker who had confiscated plaintiff's legal materials.  Oliminawiez also violated plaintiff's religious rights on March 25, 2009 and August 17, 2009, by hindering plaintiff from calling the Islamic call to prayer after plaintiff threatened to file grievances and a complaint against defendant.  On September 16, 2009, defendant Oliminawiez and SCO Boyer tampered with plaintiff's mail by refusing to take Kwanzaa's mail addressed to the U.S. District Court.  (Compl., ¶ 43).

Kwanzaa alleges that defendant Lebak refused to address plaintiff's many complaints, and will not come back to interview plaintiff, after Kwanzaa threatened to file a civil action against her.  (Compl., ¶ 44).

On February 10, 2009, a property inventory sheet, listing an ice chest, radio, Walkman with headphones, television, fan, watch, Quran, five packs of cigarettes, sweatshirt and pants, sneakers and gym socks, was sent from Bayside State Prison to EJSP, but the items were never issued to plaintiff.  Instead, defendant Randolph signed the inventory sheet as received but did not issue same to Kwanzaa.  Consequently, Kwanzaa filed a lost property claim with the EJSP administration, which was acknowledged by assignment of a claim number.  On March 13, 2009, an inmate was being released from prison and he gave his RCA television to Kwanzaa.  On March 19, 2009, defendant Hampe

responded to plaintiff's grievance about the missing inventory items and inquired about the television given to plaintiff by the released inmate.  Hampe told Kwanzaa that records indicate that plaintiff has a T.V. and once he receives a level 2 classification, the T.V. will be restored to plaintiff.  However, after level 2 was granted, Kwanzaa never received his property. He continued to file claims for damages against the State of New Jersey but has not received a response.  (Compl., ¶¶ 45-47).

On August 26, 2009, Randolph allegedly violated Kwanzaa's religious rights by referring to plaintiff by his birth name, not Kwanzaa.  (Compl., ¶ 48).

Next, Kwanzaa alleges that, on April 21, 2009, defendants Dr. John Doe and Nurse Jane Doe showed deliberate indifference to plaintiff's serious medical needs by modifying medical restrictions of no prolonged standing to 15 minutes, no leg shackles, and reducing pain medications.  (Compl., ¶ 49).

On unspecified dates, Kwanzaa alleges that defendants John and Jane Does violated his rights to be free from "CUP."[2]

In addition to his federal claims under § 1983 for violation of his constitutional rights, the RLUIPA, and the American with Disabilities Act, Kwanzaa also brings a common law claim of negligence against the defendants for breach of their duty of care owed plaintiff.

_____

[2]  Kwanzaa refers to "dates noted above" but no relevant dates were provided.  Further, the Court notes that the Complaint fails to identify the term "CUP."

Plaintiff seeks a temporary restraining order to prevent defendants from further retaliation or transfer to another "ad seg" unit.  He also seeks $580,000.00 in compensatory and punitive damages, and injunctive relief directing defendants to install cameras in the blind spots in the "ad seg" unit at EJSP.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, as plaintiff is proceeding in forma pauperis and is a convicted prisoner seeking redress against governmental officials.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United

11

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Recently, the Supreme Court revised the standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.

8(a)(2).[3]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  <u>Fed. Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

---

[3]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[4] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  [Id.]  In

---

[4]   In Conley, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

14

other words, a complaint must do more than allege the
plaintiff's entitlement to relief.  A complaint has to
"show" such an entitlement with its facts.  See Phillips,
515 F.3d at 234-35.  As the Supreme Court instructed in
Iqbal, "[w]here the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not 'show [n]'-'that
the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
1949-50].  This "plausibility" determination will be "a
context-specific task that requires the reviewing court to
draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983,

alleging a violation of his civil rights.  Section 1983 provides

in relevant part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory ... subjects, or causes to be subjected,
any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

15

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Classification Issue

Kwanzaa attempts to relitigate his claims against defendants, Mee, Paul, LaForgig, Pinchak, Moore, Swatij, Sheppard, Meehan, McWherter and Gervasi, regarding the 1999 disciplinary action, which resulted in the loss of 390 days commutation credits, which Kwanzaa contends were never restored, despite a favorable ruling from the New Jersey Appellate Division in 2003.  Kwanzaa had brought this claim in several actions, all of which either have been dismissed, see Kwanzaa v. Morton, et al., Civil No. 98-2709 (AET); Doe v. Knowles, et al., Civil No. 03-3956 (AET),[5] or the claim was dismissed from the remaining action, see Kwanzaa v. Brown, et al., Civil No. 05-5976 (RMB). Further, Kwanzaa filed a motion for reconsideration with respect to renewing this claim in Civil No. 05-5976 (RMB).  In an Opinion

---

[5]   Kwanzaa timely appealed this second action, but the Third Circuit dismissed the appeal for failure to prosecute.  See Kwanzaa v. Knowles, et al., Civil No 05-1928 (3d Cir. June 6, 2005)(order dismissing appeal).

and Order issued November 17, 2009, the Honorable Renée Marie
Bumb, U.S.D.J., denied reconsideration, finding that Kwanzaa's
claims regarding the 1999 disciplinary action and classification
issue were time-barred and no equitable tolling applied.  In the
November 17, 2009 Opinion and Order, Judge Bumb also granted
summary judgment in favor of the remaining defendants in that
action with respect to his then-surviving claims brought in the
2005 action.

     Accordingly, Kwanzaa's attempt to resurrect these claims
relating to incidents occurring in 1999, 2002 and 2003, will be
dismissed as time-barred.  The Complaint will be dismissed with
prejudice, in its entirety, as to defendants, Pinchak, Moore,
Swatij, Sheppard, Meehan, McWherter and Gervasi, and the claims
relating to the 1999, 2002 and 2003 incidents, will be dismissed
in their entirety as against defendants, Mee, LaForgig and Paul.
Kwanzaa's proper avenue to review the district court's prior
ruling would have been a timely appeal, and not a new and
separate action rehashing the same claims.

     The Court notes that Kwanzaa tries to circumvent the obvious
time bar by alleging a "continuation" of his claim since July 21,
2003.  However, he alleges no continuing events related to the
earlier incidents between 2003 and 2009.  Moreover, the 2009
incidents of which he complains (starting in February 2, 2009 and
continuing until October 2009) admittedly relate to allegations
of retaliation with respect to grievances and complaints that

Kwanzaa filed or threatened to file in 2009.  Therefore, all
claims regarding the classification issue, disciplinary action,
and other retaliatory actions taken in and through 1999 and 2003,
will be dismissed with prejudice.

The Court now turns to Kwanzaa's remaining claims concerning
incidents occurring in 2009.

B.  Untimely Review Claim

Kwanzaa asserts that he was denied a timely "ad seg" review
within sixty days as allegedly required by regulation.  In
particular, he complains that his review for a classification
level change should have been held on March 20, 2009, but was
conducted on April 17, 2009, barely one month later.

Even if this Court were to find that plaintiff's
classification review is a protected liberty interest under the
Due Process Clause,[6] which the Court will assume for argument's

---

[6] It is well-established that an inmate does not possess a
liberty interest arising from the Due Process Clause in
assignment to a particular custody level or security
classification or a place of confinement.  See Wilkinson v.
Austin, 545 U.S. 209, 221-22 (2005)(the Constitution does not
give rise to a liberty interest in avoiding transfers to more
adverse conditions of confinement); Olim v. Wakinekona, 461 U.S.
238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976);
Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976).  Moreover, the
custody placement or classification of state prisoners within the
State prison system is among the "wide spectrum of discretionary
actions that traditionally have been the business of prison
administrators rather than of the federal courts."  Meachum, 427
U.S. at 225.  Governments, however, may confer on inmates liberty
interests that are protected by the Due Process Clause.  "But
these interests will be generally limited to freedom from
restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due
Process Clause of its own force, nonetheless imposes atypical and

sake here, Kwanzaa can not show a violation of constitutional magnitude by alleging his review was less than a month late.

With respect to parole eligibility hearings, Judge Thompson of this Court has held that due process does not require that a hearing be held in exact accordance with the time period specified by the applicable New Jersey statutes.  See Burgos v. New Jersey State Parole Board, 2000 WL 33722126, *8 (D.N.J. Aug. 7, 2000).  While delay for an extended period of time may violate a prisoner's due process rights, "procedural errors are generally cured by holding a new hearing in compliance with due process requirements."  Id. at *8-9.  See also Johnson v. Paparozzi, 219 F. Supp.2d 635, 642 (D.N.J. 2002).

Therefore, this claim against defendants, Mee, LaForgig, and Paul, will be dismissed with prejudice for failure to state a claim.

C.  Alleged Religious Violations

Kwanzaa next contends that defendants, Mee, LaForgig and Paul violated his First Amendment right to religious freedom, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. § 2000cc-1.  RLUIPA protects the exercise of religious freedom by prisoners confined in institutions that receive federal funding:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an

---

significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.

institution, ... even if the burden results from a rule of
general applicability, unless the government demonstrates
that imposition of the burden on that person –
    (1) is in furtherance of a compelling governmental
    interest; and
    (2) is the least restrictive means of furthering
    that compelling governmental interest.

42 U.S.C. § 2000cc-1.

The United States Court of Appeals for the Third Circuit
defined substantial burden to mean that "a substantial burden
exists where: (1) a follower is forced to choose between
following the precepts of his religion and forfeiting benefits
otherwise available to other inmates versus abandoning one of the
precepts of his religion in order to receive a benefit; or (2)
the government puts substantial pressure on an adherent to
substantially modify his behavior and to violate his beliefs."
Washington v. Klem, 497 F.3d 272,  (3d Cir. Aug 2, 2007)(held
that prison's ten book limitation policy substantially burdened
prisoner's religious exercise).

Here, Kwanzaa alleges that, during Ramadan, he did not
receive the same 2200 calorie diet that non-Muslims received,
which resulted in weight loss.  He also states that his special
meals were issued early so they became cold and/or spoiled by the
time it was to be eaten.

Generally, prisoners who are practicing Muslims must be
provided a pork-free diet which adequately nourishes them.  See,
e.g., Salaam v. Lockhart, 856 F.2d 1120, 1124 (8th Cir. 1988)
(prison administrators must provide Muslim prisoners with

20

adequate amounts of pork-free foods to comprise a nutritious diet); McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) (finding that inmates are entitled to be provided ample food which will keep them in good health and which satisfies the laws of their religion); Kahane v. Carlson, 527 F.2d 492, 495 (2d Cir. 1975) (holding that prison administrators must provide prisoners with food that satisfies the dietary tenets of their religion); but see, Williams v. Morton, 343 F.3d 212 (3d Cir. 2003) (nutritionally-adequate vegetarian diet is sufficient to comply with Free Exercise rights; institution need not provide pork-free meat diet); Ross v. Blackledge, 477 F.2d 616, 618 (4th Cir. 1973) (prison is not required to provide Muslim prisoners a special diet where sufficient nourishment can be obtained from a regular, pork-free diet); Abernathy v. Cunningham, 393 F.2d 775, 778 (4th Cir. 1968) (same).  Thus, prison authorities must provide Muslim prisoners other sufficient nourishing foods when pork products are served.  See N.J.A.C. 10A:31-10.4(b) ("When the religious beliefs of an inmate(s) require the inmate(s) to adhere to dietary laws, provisions shall be made for alternate food items."); see also Muslim v. Frame, 854 F. Supp. 1215, 1224 (E.D. Pa. 1994) ("inmates who are practicing Muslims are entitled to a diet which provides them with adequate nourishment without the consumption of pork").  However, see Greenberg v. Hill, 2009 U.S. Dist. LEXIS 28027, at *5, 2009 WL 890521 (S.D. Ohio Mar. 31, 2009)(finding no substantial burden when Passover meal was not

provided on two out of eight days due to an "unintentional oversight resulting from inadvertent miscommunication," and no such mistake had been made in the three years prior to the Passover in question).

Here, Kwanzaa's allegations fail to rise to the level of either a First Amendment religious violation or a violation of the RLUIPA.  He does not allege that he was denied a nutritionally adequate diet or that the diet provided prevented him from adhering to religious dietary law.  Kwanzaa merely states that several meals were delivered too early and that his three meals were short of 2200 calories per day.  The Court likewise finds no equal protection violation of constitutional magnitude based on these limited alleged violations.

Kwanzaa also alleges that, on two dates, March 25, 2009 and August 17, 2009, defendant Oliminawiez violated his religious rights by hindering plaintiff from calling the Islamic call to prayer.  Kwanzaa does not allege that he was prevented from joining in Islamic prayer.  He also claims that his religious rights were violated because defendants Randolph and Estcato referred to plaintiff by his birth name and not his Muslim name, Kwanzaa.

The First Amendment, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

22

thereof; or abridging the freedom of speech, or of the press; or
the right of the people peaceably to assemble, and to petition
the Government for a redress of grievances." Conditions of
confinement claims arise under the due process clause of the
Fourteenth Amendment for pretrial detainees or civil detainees,
such as those who have been committed to a state facility. See
Youngberg v. Romeo, 457 U.S. 307, 312 (1982). In evaluating the
constitutionality of conditions or restrictions of detention, the
inquiry is whether the conditions amount to punishment of the
detainee. Bell v. Wolfish, 441 U.S. 520, 536 (1979). "[T]he
fact that detention interferes with the detainee's understandable
desire to live as comfortably as possible and with as little
restraint as possible during confinement does not convert the
conditions or restrictions of detention into punishment." Id.
Prison administrators "should be accorded wide-ranging deference
in the adoption and execution of policies and practices that in
their judgment are needed to preserve internal order and
discipline and maintain institutional security." Id. at 547.
Thus, to state a First Amendment claim, an inmate must establish
allegations that indicate a constitutional violation and show
that the government has no legitimate penological interest in the
restrictions it imposes. See Lewis, 518 U.S. at 361; Bell v.
Wolfish, 441 U.S. at 551-52.

    To establish his denial of religious freedom claim, Kwanzaa
must demonstrate that the restriction on religious practice was

not reasonably related to a legitimate, penological interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987).  This reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

In this case, Kwanzaa's bare allegations are not sufficient to state a First Amendment free exercise claim.  He fails to allege that he was restricted from participation in Islamic prayer, only that he was denied the opportunity to call others to prayer.  He does not indicate how this minimal restriction imposed while Kwanzaa was in administrative segregation actually prevented him from practicing his faith.  Moreover, Kwanzaa's allegation concerning the use of his birth name does not show that he was restricted in any way in practicing his Muslim faith. Thus, neither of these alleged wrongful acts rise to the level of a violation of constitutional dimension.  Therefore, the Court

24

will dismiss all claims of religious freedom violations for
failure to state a claim upon which relief may be granted.

D.   Conditions of Confinement Claim

Kwanzaa makes numerous allegations concerning the conditions
of his confinement at the EJSP "ad seg" unit for the months in
2009 that he was confined there, from February 2009 through
October 2009.  For instance, he claims that he was not given
clean sheets and pillow cases once a week, or a clean blanket
every six months.  He also claims that his cell had bugs, ants,
bad plumbing with water running down the walls, limited hot
water, and bad drinking water with high levels of arsenic.  He
also suffered from lack of proper heat and ventilation.  His
access to razors was denied so he could not shave daily or
receive haircuts once a month.  The unit did not have cable
antennas or movies, and the canteen offered only expensive
televisions and food high in sugar for purchase.

"The Eighth Amendment to the United States Constitution
prohibits any punishment which violates civilized standards and
concepts of humanity and decency." Young v. Quinlan, 960 F.2d
351, 364 (3d Cir. 1992), superseded on other grounds by 42 U.S.C.
§ 1997e(a).  A prisoner does not lose this protection despite a
prison sentence, for "the treatment a prisoner receives in prison
and the conditions under which he is confined are subject to
scrutiny under the Eighth Amendment." Helling v. McKinney, 509
U.S. 25, 31 (1993).  In order to establish a claim under the

Eighth Amendment based on conditions of confinement, the Supreme
Court has set forth a two-part test with objective ("Was the
deprivation sufficiently serious?") and subjective ("Did the
officials act with a sufficiently culpable state of mind?")
components.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The
objective element requires a prisoner to show that his living
conditions amounted to a "serious deprivation of basic human
needs."  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).  The
subjective element demands that the prisoner demonstrate "that
prison officials acted or failed to act with deliberate
indifference."  <u>Ingalls v. Florio</u>, 968 F. Supp. 193, 198 (D.N.J.
1997).

With regards to the objective prong, "the Constitution does
not mandate comfortable prisons."  <u>Rhodes</u>, 452 U.S. at 347.  "To
the extent that such conditions are harsh, they are part of the
penalty that criminal offenders pay for their offenses against
society."  <u>Id</u>.  Conditions of confinement for convicted criminals
are unconstitutional only when they "deprive inmates of the
minimal civilized measure of life's necessities."  <u>Id</u>.  Indeed,
under the Due Process Clause, as well as the Eighth Amendment,
prison officials must satisfy inmates' "basic human needs - e.g.,
food, clothing, shelter, medical care, and reasonable safety."
<u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993).

In this case, Kwanzaa's complaints concerning the quality of
drinking water, bug infested cells, bad plumbing causing leaks in

26

his cell and lack of proper ventilation for the eight months that he was confined at EJSP in the administrative segregation unit appear to rise to the level of a constitutional deprivation sufficient at this time to allow this portion of the claim to proceed.

However, his remaining allegations concerning clean sheets, pillow cases, or a clean blanket, as well as limited razor and hair cuts and no cable or movies, are not sufficient to state a claim that he has been deprived of life's necessities. Therefore, this part of his conditions claim will be dismissed for failure to state a claim.

E.   Interference with the Mail Claim

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests.   See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).   A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.   Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.   See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail

27

Room Dep't, 990 F.2d 304 (7th Cir. 1993).  The Court of Appeals for the Third Circuit has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  The Third Circuit has held that the legal mail policy of state prisons in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff. Jones v. Brown, 461 F.3d 353 (3d Cir. 2006), cert. denied, 127 S. Ct. 1822 (2007).

Allegations of inspection or interference with an inmate's legal mail also may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case.  See Wolff v. McDonnell, 418 U.S. 539, 575 (1974) (upholding regulation permitting legal mail to be opened and inspected for contraband, but not read, in the presence of the inmate).

Here, Kwanzaa alleges that his legal and regular mail is not processed the next day as per state regulation.  He also alleges

only a single incident when defendant's Oliminawiez and Boyer refused to take Kwanzaa's mail addressed to the federal court. This Court finds no claim of a constitutional deprivation based on these limited and bald allegations. Moreover, Kwanzaa alleges nothing more than mere conclusory statements of liability with no factual support to meet the pleading threshold as set forth in Iqbal, 129 S.Ct. at 1949-50. Therefore, the claim asserting interference with legal and regular mail will be dismissed for failure to state a claim.

F.  Claims Concerning Telephone and Visitation Restrictions

Next, Kwanzaa alleges that his telephone calls were limited to one call per week while he was in administrative segregation, and that he could not add a new attorney to his phone list for 90 days. He also complains that visitation was restricted to parents, siblings, spouses and children.

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication). See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison

inmates).   Cf., Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation"); Neumeyer v. Beard, 301 F. Supp.2d 349, 351 (M.D. Pa. 2004), aff'd, 421 F.3d 210 (3d Cir. 2005) (convicted prisoners and their families and spouses have no "absolute constitutional right to visitation" other than with legal counsel); Young v. Vaughn, No. CIV. A. 98-4630, 2000 WL 1056444 (E.D. Pa. Aug. 1, 2000); Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa. 1992)("Inmates have no constitutional right to visitation.  Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion"), aff'd, 980 F.2d 722 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993).

Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa.) (citation omitted).

Free citizens possess a coextensive First Amendment right to reach out to those who are incarcerated. Thornburgh, 490 U.S. at 410 n. 9; Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999).

However, the institution may place limits on visitation if such limits are necessary to meet legitimate penological

objectives, such as rehabilitation and the maintenance of security and order.  See Overton v. Bazzetta, 539 U.S. 126 (2003)(withdrawing visitation privileges for a period of time to effect prison discipline "is not a dramatic departure from accepted standards for conditions of confinement").  When a prison regulation or practice impinges on inmates' or free citizens' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  The reasonableness standard is applied, using the four factors as set forth in Turner:

> (1) There must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.  Moreover, the governmental objective must be a legitimate and neutral one.
>
> (2) Whether there are alternative means of exercising the right that remain open to prison inmates.
>
> (3) The impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.
>
> (4) The absence of ready alternatives is evidence of the reasonableness of a prison regulation.  By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  This is not a "least restrictive alternative" test.

Turner, 482 U.S. at 89-90  (citations omitted).

Here, Kwanzaa simply alleges that visitation in administrative segregation is limited to only parents, spouses,

children and siblings.  The Court finds no violation of constitutional magnitude under these circumstances, and this claim will be dismissed with prejudice for failure to state a claim.

Kwanzaa also alleges that his phone calls were limited to one a week while he was in administrative segregation.  Inmates have a right protected under the First Amendment to communicate with their family and friends by reasonable access to the telephone.[7]  Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978).  However, it is established that a prisoner "has no right to unlimited telephone use."  Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir.), cert. denied, 493 U.S. 895 (1989)).  An inmate's telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution."  Id. (quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)).

Thus, inmates' rights to communicate, even with legal counsel, are not unlimited.  Aswegan v. Henry, supra.  Prison officials can limit communications, particularly telephone communications, to ensure, safety, security, and the orderly

---

[7]  Inmates' ability to communicate with their lawyers is further protected by their constitutional right of access to the courts and may implicate the Sixth-Amendment right to assistance of counsel in criminal proceedings.  See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992)(analyzing telephone use as access-to-courts issue); Owens-El v. Robinson, supra (applying Sixth-Amendment standards to telephone use restrictions).

operation of their institution.  Griffin-El v. MCI
Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo.
1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).  Numerous and
sometimes stringent restrictions on personal telephone calls by
inmates have been upheld as constitutional.  Most of these
restrictions involve limits on the numbers of calls permitted per
week, limits on persons who can be called, and time limits on
individual calls.  For example, close custody inmates may be
limited to a list of three recipients of personal calls.  Benzel
v. Grammar, 869 F.2d 1105 (8th Cir.), cert. denied, 493 U.S. 895
(1989).

     To the extent a prisoner asserts that the restriction on
telephone use has violated his First Amendment rights, he also
must allege that he has suffered any "actual injury" from the
telephone restriction.  See, e.g., Peterkin v. Jeffes, 855 F.2d
1021, 1041 (3d Cir. 1989)(finding that in order to assert a
viable claim of telephone deprivation, an inmate must make some
showing of prejudice or actual injury); Lewis v. Casey, 518 U.S.
343 (1996)(stating that a prisoner alleging a violation of his
right of access must show that prison officials caused him past
or imminent "actual injury" by hindering his efforts to pursue
such a claim).

     Recently, the Supreme Court has held that the telephone
restriction of one social call per week is rationally related to
security and rehabilitation, and not an exaggerated or

unreasonable response to a prisoner's criminal activity prior to incarceration.  See Beard v. Banks, 126 S. Ct. 2572 (2006) (holding that ban on all newspapers, magazines, and personal photographs for inmates housed in long term segregation unit does not violate First Amendment because it is rationally related to rehabilitation); Overton v. Bazzetta, 539 U.S. 126 (2003) (holding that ban on visitation for inmates who commit multiple substance-abuse violations is rationally related to security and rehabilitation).

Accordingly, this Court finds that Kwanzaa's allegations concerning the telephone restrictions are a reasonable exercise of administrative and security concerns with regard to inmates in administrative segregation.  Kwanzaa states no cognizable claim of a constitutional violation.  Moreover, he fails to allege any actual injury with respect to the alleged telephone restrictions.  Therefore, this claim also will be dismissed with prejudice for failure to state a claim.

G.  Access to Courts Claims

Kwanzaa alleges that he was denied his First Amendment right of access to the courts by denial of trained paralegals available at EJSP, and denial of postage stamps and pens for a month.  He baldly claims that this denial resulted in his missing a deadline for a court case, but he does not allege that his case was dismissed because of the missed deadline.

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[8] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430 U.S. at 823)(internal quotation omitted).

---

[8]  The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original). Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges. See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000). But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

Here, Kwanzaa fails to allege any actual injury as a result of the alleged denial of trained paralegals and postage stamps and pens for a month.  He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action.  Furthermore, Kwanzaa does not articulate how the allegedly inadequate and untrained paralegals or lack of legal supplies hindered his efforts to either pursue this claim or other court actions, or even his filing of administrative grievances at EJSP.  Therefore, his claim alleging denial of access to the courts based on an alleged failure to provide adequately trained paralegals and

legal supplies will be dismissed without prejudice for failure to state a claim at this time.

H.   Denial of Medical Care Claim

Kwanzaa makes numerous allegations against several defendants concerning denial of medical care in violation of the Eighth Amendment.  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for

which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment."

Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted).  Even if a
doctor's judgment concerning the proper course of a prisoner's
treatment ultimately is shown to be mistaken, at most what would
be proved is medical malpractice and not an Eighth Amendment
violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

    The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment.  See Rouse, 182 F.3d at 197.  The court also has held
that needless suffering resulting from the denial of simple
medical care, which does not serve any penological purpose,
violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See
also Monmouth County Correctional Institutional Inmates, 834 F.2d
at 346 ("deliberate indifference is demonstrated '[w]hen ...
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician
capable of evaluating the need for such treatment"); Durmer v.
O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897
F.2d 103 (3d Cir. 1990).

    Here, Kwanzaa alleges several individual incidents where he
was denied medical care.  First, Kwanzaa states that, on June 13,
2009, defendant DeLarossa would not call a nurse when Kwanzaa

40

allegedly suffered chest pains and an asthma attack.  Likewise, on July 16, 2009, defendants Wilkerson and Shrenke denied him medical care when plaintiff was suffering an asthma attack by not calling for a nurse.  Shrenke also purportedly violated plaintiff's rights by asking Kwanzaa as to the medications he takes.

Next, Kwanzaa states that medical orders were ignored on August 15, 2009, when defendant Estcato handcuffed plaintiff behind his back, leaving plaintiff unable to ambulate by walking cane.  Finally, Kwanzaa alleges that, on April 21, 2009, Dr. John Doe and Nurse Jane Doe at EJSP showed deliberate indifference to plaintiff's medical needs by modifying medical restrictions of no prolonged standing to 15 minutes, and reducing pain medications.

This Court finds that Kwanzaa fails to state a cognizable Eighth Amendment denial of medical care claim.  First, as to the isolated incidents where no nurse was called during plaintiff's asthma attacks, Kwanzaa does not allege a serious medical need. He also does not state that he was not provided with his medication or needed immediate medical intervention.  At most, his claim sounds more in harassment and retaliation, which will be discussed below.  Thus, based on these limited allegations, plaintiff's denial of medical care claim will be dismissed.

Further, as to his allegation that the nurse and doctor modified his medical restrictions and medications, Kwanzaa fails to allege any facts to show deliberate indifference.  At most,

41

his allegations tend to show a mere difference of medical opinion as to his course of treatment rather than any deliberate indifference to deny medical treatment.  Therefore, Kwanzaa's denial of medical care claim will be dismissed with prejudice, in its entirety, for failure to state a cognizable claim for relief.

I.  <u>ADA Claim</u>

Kwanzaa asserts jurisdiction under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et</u> <u>seq</u>.  However, the Court notes that nowhere in plaintiff's Complaint does he identify or describe the disability that would qualify him for protection of the law under the American Disabilities Act.  Nor does he make any allegations that would serve to meet the statutory requirements of an ADA claim.  Accordingly, because plaintiff alleges nothing more than mere conclusory statements of liability with no factual support to meet the pleading threshold as set forth in <u>Iqbal</u>, 129 S.Ct. at 1949-50, his ADA claim will be dismissed.

J.  <u>Harassment and Retaliation Claims</u>

As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society."  <u>Hudson v. Palmer</u>, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against calculated harassment.[9]  <u>Id</u>. at 530.  Generally,

---

[9]  This Court acknowledges that plaintiff appears to have been a pretrial detainee at the time of the alleged incident, and therefore, the Eighth Amendment standard addressed here acts only

42

however, mere verbal harassment does not give rise to a
constitutional violation.  See McBride v. Deer, 240 F.3d 1287,
1291 n. 3 (10th Cir. 2001)(taunts and threats are not an Eighth
Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th
Cir. 1987)(vulgar language); Rivera v. Goord, 119 F. Supp.2d 327,
342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's
constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822
F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383
(E.D.Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J.
1988).  Racially discriminatory statements, racial slurs and
epithets, without more, also do not establish liability under §
1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)
(verbal abuse directed at religious and ethnic background does
not state a cognizable constitutional violation); Black Spotted
Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v.
Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999)("without even a
suggestion of physical injury, [defendants'] verbal abuse and
racial epithets, although continuing for a long period of time,
fall short of conscience shocking conduct"); Haussman v. Fergus,
894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Ass'n,
822 F. Supp. at 187-189 & n. 3 (corrections officer's use of
racial slurs did not amount to constitutional violation); Wright
v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y.1989), aff'd, 891 F.2d

---

as a floor for a due process inquiry into the alleged claim of
harassment by certain correctional officers.

278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir.1988). Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(defendant laughed at prisoner and threatened to hang him). However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation. Douglas, 684 F. Supp. at 398 (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992)(gun was put to prisoner's head); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot prisoner).

Here, Kwanzaa alleges numerous acts of harassment by multiple defendants. For instance, he states that defendant DeLarossa drew a picture of a penis on plaintiff's name tag, and that other defendants called him by his birth name and not his Muslim name. Defendants DeLarossa and Wilkerson also lit a cigarette to toilet paper in plaintiff's cell to cause it to become smoke-filled and plaintiff to suffer an asthma attack. Defendant Shrenke confiscated his legal materials without reason. Kwanzaa was placed in tight handcuffs with a black box that twisted his hands and he could not walk with a cane. Defendant Estcato also tripped plaintiff and kicked him when Kwanzaa could

not get up.  Finally, Kwanzaa alleges that defendant LaForgig
reduced plaintiff's classification level in retaliation for
Kwanzaa filing a lawsuit in July 2009 on behalf of another
inmate.

Each of these violations on their own would not rise to the
level of constitutionally impermissible conduct.  However, taken
together, the Court finds that plaintiff may be able to show a
pattern of constitutionally impermissible harassment, especially
where some of the conduct resulted in physical harm.

Moreover, Kwanzaa alleges that this pattern of harassment
was dealt in retaliation for him filing grievances and
complaints.  Thus, it also appears that Kwanzaa is invoking a
claim of retaliation against these defendant correctional
officers.  "Retaliation for the exercise of constitutionally
protected rights is itself a violation of rights secured by the
Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d
Cir. 1990).  To prevail on a retaliation claim, plaintiff must
demonstrate that (1) he engaged in constitutionally-protected
activity; (2) he suffered, at the hands of a state actor, adverse
action "sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights;" and (3) the protected
activity was a substantial or motivating factor in the state
actor's decision to take adverse action.  Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229
F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125

F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.
Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v.
Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

Based on the allegations as set forth above, this Court
finds that Kwanzaa may be able to show a claim of retaliation
because he alleges that all of the wrongful and harassing conduct
was done in retaliation for plaintiff filing grievances and
complaints, a legitimate exercise of plaintiff's First Amendment
rights.  Therefore, plaintiff's claims of harassment and
retaliation will be allowed to proceed at this time.

K.   Deprivation of Property Claim

The Fourteenth Amendment provides, in pertinent part here,
that the State may not "deprive any person of life, liberty, or
property, without due process of law[.]"  The "due process of
law" essentially requires that the government provide a person
notice and opportunity to be heard in connection with the
deprivation of life, liberty or property.  Zappan v. Pennsylvania
Board of Probation and Parole, 152 Fed. Appx. 211, 220 (3d Cir.
2005)("The essential requirements of any procedural due process
claim are notice and the opportunity to be heard.").  Hence, to
establish a prima facie case of a procedural due process
violation, a plaintiff must establish: (1) a deprivation of a
constitutionally protected liberty or property interest, (2)
state action, and (3) constitutionally inadequate process.  See

46

Rusnak v. Williams, 44 Fed. Appx. 555, 558 (3d Cir. 2002)
("Procedural due process claims, to be valid, must allege state
sponsored-deprivation of a protected interest in life, liberty or
property.  If such an interest has been or will be deprived,
procedural due process requires that the governmental unit
provide the individual with notice and a reasonable opportunity
to be heard.")(citation omitted).

To have a property interest, Kwanzaa must demonstrate "more
than an abstract need or desire for it. ... He must, instead,
have a legitimate claim of entitlement to it" under state or
federal law.  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).
For present purposes, a procedural due process analysis involves
a two step inquiry: the first question to be asked is whether the
complaining party has a protected liberty or property interest
within the contemplation of the Due Process clause of which he
has been deprived and, if so, the second question is whether the
process afforded the complaining party to deprive him of that
interest comported with constitutional requirements.  Shoats v.
Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Here, Kwanzaa alleges that his personal property, including
such items as an ice chest, radio, Walkman, T.V., fan, watch,
cigarettes and clothes, were supposedly sent from Bayside State
Prison to EJSP upon his transfer, but were never issued to him.
He filed a lost property claim, but has not received a response.

To the extent that Kwanzaa was deprived of personal property as a result of his transfer to EJSP, he has a post-deprivation remedy. Property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Holman, 712 F.2d at 856.[10]  The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  See  Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).

Therefore, any deprivation of property claim asserted by Kwanzaa here will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[10]   In Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.  455 U.S. at 435-36.  But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000)(citing United States v. James Daneil Good Real Property, 510 U.S. 43, 53 (1993))(in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

L.  Failure to File Criminal Charges Claim

Kwanzaa also seeks to have federal criminal charges issued against defendants DeLarossa and Wilkerson, for lighting a cigarette in his cell, and against defendants, Mee, LaForgig, Paul and Vessell for conspiring to cover up the incident.  This Court finds that any such claim alleging failure to prosecute or file criminal charges is not cognizable under any federal law, specifically, 42 U.S.C. § 1983.  See Leeke v. Timmerman, 454 U.S. 83, 85-87 (1981); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").  See also Maine v. Taylor, 477 U.S. 131, 137 (1986); Heckler v. Chaney, 470 U.S. 821, 832 (1985); United States v. General Dynamics Corp., 828 F.2d 1356, 1366 (9th Cir.1987).

Therefore, this claim should be dismissed with prejudice, in its entirety, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), as against the defendants, DeLarossa, Wilkerson, Mee, LaForgig, Paul and Vessell.

M.  Common Law Negligence Claim

Finally, Kwanzaa's bald allegation of negligence against the defendants in general must be dismissed at this time because plaintiff alleges nothing more than mere conclusory statements of liability with no factual support to meet the pleading threshold as set forth in Iqbal, 129 S.Ct. at 1949-50.

N.   Motion for Preliminary Injunction

Kwanzaa also seeks preliminary injunctive relief.  To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest."  Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990).  The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction.  See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).

Here, at least with respect to several of his claims regarding continued confinement, denial of access to courts, and denial of religious practice, Kwanzaa has not alleged facts to satisfy the first requirement that he may be likely to succeed on the merits.  Moreover, Kwanzaa fails to articulate irreparable harm, and thus, cannot satisfy the second mandatory requirement.

Indeed, with respect to his claim for injunctive relief regarding the conditions of his confinement at EJSP and the installment of cameras in the blind spots of the administrative segregation unit at EJSP, such relief is now moot since Kwanzaa has been transferred from the facility to another prison.

Therefore, because Kwanzaa is unable to establish all four factors necessary for preliminary injunctive relief as required, his application for preliminary injunctive relief will be denied.

IV.   CONCLUSION

For the reasons set forth above, plaintiff's claims asserting an untimely administrative segregation review, denial of religious freedom, interference with his mail, unconstitutional telephone and visitation restrictions, denial of medical care, violation of the Americans with Disabilities Act, deprivation of property, and failure to file criminal charges, will be dismissed with prejudice, in their entirety, as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  In addition, plaintiff's claims asserting denial of access to the courts and common law negligence, will be dismissed without prejudice for failure to state a claim at this time.  Further, plaintiff's claim concerning his classification level relating to events in 1999 through 2003 will be dismissed with prejudice as time-barred.  However, plaintiff's claims asserting unconstitutional conditions of confinement, harassment

51

and retaliation will be allowed to proceed at this time as
against defendants, Mee, LaForgig, Paul, DeLarossa, Wilkerson,
Shrenke, and Estcato.  Finally, plaintiff's request for
preliminary injunctive relief and injunctive relief will be
denied as moot because plaintiff is no longer confined at East
Jersey State Prison.  An appropriate order follows.


                                       s/Stanley R. Chesler
                                         STANLEY R. CHESLER
                                       United States District Judge


DATED: June 28, 2011